## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., in its capacity as agent for Associated Bank, N.A., Bank of America, N.A., JPMorgan Chase Bank, N.A., Fifth Third Bank, M&I Marshall & Ilsley Bank, and Union Bank of California, N.A., )))))) | |
| ) | Case No. |
| Plaintiff, )) | |
| v. ) | |
| FBOP CORPORATION, a bank holding company organized under the laws of the State of Illinois, ))) | |
| Defendant. ))) | |

## COMPLAINT

JPMorgan Chase Bank, N.A. ("Agent"),[1] a national bank, in its capacity as Agent for the following lenders: Associated Bank, N.A., Bank of America, N.A., Fifth Third Bank, JPMorgan Chase Bank, N.A., M&I Marshall & Ilsley Bank, and Union Bank of California, N.A. (collectively, the "Lenders"), for its Complaint against FBOP Corporation ("Borrower"), a bank holding company organized under the laws of the State of Illinois, alleges as follows:

### NATURE OF THE ACTION

1.      This is an action to obtain judgment and collect on amounts owed under matured promissory notes.  On April 30, 2001, Borrower entered into an Amended and Restated Credit

---

[1] JPMorgan Chase Bank, N.A. is a successor by merger to Bank One, N.A., which is a successor in interest to American National Bank and Trust Company of Chicago, the original agent and lender under the Credit Agreement.

Agreement (such agreement, as amended, the "Credit Agreement")[2] with Lenders and Agent. JPMorgan Chase Bank, N.A. serves as Agent for the Lenders, and brings this action in its capacity as Agent for its benefit and the benefit of the Lenders. Copies of the Credit Agreement and all amendments are attached hereto as **Exhibits A** through **K** and are incorporated herein by reference. Certain capitalized terms used herein, unless defined herein, shall have the meanings set forth in the Credit Agreement.

2. Pursuant to the Credit Agreement, the Lenders have made revolving loans to Borrower with a principal balance of $246,000,000.00, payable in full on May 28, 2009. In connection with the loans, Borrower has executed and delivered to the Lenders certain Revolving Notes (the "Notes"). Copies of the Notes are attached hereto as **Exhibits L** through **Q** and are incorporated herein by reference.

3. Borrower's Obligations under the Notes became payable in full on May 28, 2009, and Borrower did not pay the Notes on such date. Agent files this Complaint seeking judgment for the full amount of all Obligations and other charges owed under the Credit Agreement and the Notes.

## THE PARTIES

4. Plaintiff Agent JPMorgan Chase Bank, N.A. is a national banking association with its main office in Columbus, Ohio. Pursuant to 28 U.S.C. § 1348, Plaintiff, in its capacity as Agent and lender, is a citizen of the State of Ohio. Lender Associated Bank, N.A. is a national banking association with its main office in Green Bay, Wisconsin, and is a citizen of the State of Wisconsin. Lender Bank of America, N.A. is a national banking association with its main office

---

[2] The Amended and Restated Credit Agreement superseded and replaced the original June 2, 1997 Credit Agreement and its related amendments with FBOP Corporation.

in Charlotte, North Carolina, and is a citizen of the State of North Carolina. Lender Fifth Third Bank is a Michigan banking corporation with its headquarters and principal place of business in Grand Rapids, Michigan, and is a citizen of the State of Michigan. Lender M&I Marshall & Ilsley Bank is a Wisconsin chartered bank with its headquarters and principal place of business in Milwaukee, Wisconsin, and is a citizen of the State of Wisconsin. Lender Union Bank of California, N.A. is a national banking association with its main office in San Francisco, California, and is a citizen of the State of California.

5.     Defendant FBOP Corporation is an Illinois bank holding corporation with its principal place of business in Oak Park, Illinois.   Defendant is a citizen of the State of Illinois.

## VENUE AND JURISDICTION

6.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and because the dispute is between citizens of different states.

7.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) because the defendant resides in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.   Further, the parties to the Credit Agreement have consented to jurisdiction and venue of the state or federal courts located in Chicago, Illinois. *See* Credit Agreement, **Exhibit A**, Section 15.2.

## **BACKGROUND FACTS**

**A.    The Credit Agreement.**

8.    Pursuant to the Credit Agreement, the Lenders made certain revolving loans (the "Revolving Loans") to Borrower in an amount not less than $246,000,000.

9.    The Credit Agreement provides that the maturity date of the Revolving Loans, defined as the "Revolving Facility Termination Date," is May 28, 2009. *See* Tenth Amendment to Credit Agreement, **Exhibit K**, Section 2.1 (amending Section 1.1 of the Credit Agreement).

10.    The Notes require that Borrower pay the principal of, and accrued and unpaid interest on, the Revolving Loans, in full on the Revolving Facility Termination Date. *See* Notes, **Exhibits L** through **Q**, first paragraph.

11.    The Revolving Facility Termination Date of May 28, 2009, has passed, and Borrower has not paid the principal of, and accrued and unpaid interest on, the Revolving Loans.

12.    Pursuant to Section 2.11 of the Credit Agreement, if amounts advanced pursuant to the Revolving Loans are not paid at maturity, the Lenders may, by notice to the Borrower, require that such advances will bear interest at a default rate equal to the then applicable interest rate plus an additional 2% per annum. *See* Credit Agreement, **Exhibit A**, Section 2.11.  Agent, on behalf of Lenders, notified Borrower of the applicability of such default rate on June 10, 2009.

13.    Additionally, pursuant to Section 9.7 of the Credit Agreement, Borrower "agrees to reimburse Agent and the Lenders for any and all reasonable costs, and out-of-pocket expenses (including reasonable attorneys' fees and time charges of attorneys for Agent and Lenders) paid or incurred by Agent or any Lender in connection with the collection and enforcement of the Transaction Documents." *See* Tenth Amendment to Credit Agreement, **Exhibit K**, Section 2.20 (amending Section 9.7 of the Credit Agreement).

14.     Section 15.1 of the Credit Agreement provides that the Credit Agreement is governed by Illinois law, but subject to Federal laws applicable to national banks. *See* Credit Agreement, **Exhibit A**, Section 15.1.

15.     The Notes provide that the Notes are governed by Illinois law, but subject to Federal laws applicable to national banks. *See* Notes, **Exhibits L through Q**, sixth paragraph.

**B.     Borrower's Breach and Failure to Cure.**

16.     Borrower is currently in breach of the Credit Agreement and Notes for, *inter alia*, its failure to pay the total principal amount of $246,000,000 by the Revolving Facility Termination Date of May 28, 2009.

17.     As of the Revolving Facility Termination Date of May 28, 2009, the Obligations of Borrower totaled at least $247,812,605.90, including $246,000,000.00 in principal due under the Notes, $1,558,596.75 in accrued but unpaid interest under the Credit Agreement and Notes, and $254,009.10 in fees and expenses incurred by Agent, including attorneys' fees.  All of the foregoing amounts remain unpaid as of the filing of this Complaint.  Additionally, interest, at the default rate set forth in the Credit Agreement and Notes, attorneys' fees, and expenses continue to accrue each day.

**C.     Borrower's Subordinated Obligations.**

18.     The Credit Agreement defines "Subordinated Indebtedness" as, collectively: (a) the Indebtedness of Borrower issued pursuant to that certain Subordinated Indenture, dated as of December 28, 2001, between Borrower and BNY Midwest Trust Company, as trustee (the "2001 Subordinated Indenture"), which Indebtedness had an aggregate outstanding principal amount of $94,850,000 as of May 29, 2008, and a maturity date of January 15, 2009 (the "2001 Subordinated Debt"); and (b) any indebtedness of Borrower the payment of which is

subordinated to payment of the Obligations to the written satisfaction of the Required Lenders. *See* Tenth Amendment to Credit Agreement, **Exhibit K**, Section 2.1.

19. Pursuant to the Credit Agreement, Borrower shall not, *inter alia*, make any payment of principal or interest on the 2001 Subordinated Debt except to the extent expressly permitted pursuant to the terms of the 2001 Subordinated Indenture. *See* Tenth Amendment to Credit Agreement, **Exhibit K**, Section 2.15.

20. The 2001 Subordinated Indenture provides that: (a) the Loans made by the Lenders under the Credit Agreement are "Senior Debt" as defined in the 2001 Subordinated Indenture; and (b) in the event that the principal of any Senior Debt is not paid at maturity, no payments may be made with respect to the 2001 Subordinated Debt.

21. Borrower has outstanding junior trust preferred security related debentures (the "TPS-Related Debentures") issued to special purpose trust subsidiaries of Borrower between 1999 and 2007.

22. The TPS-Related Debentures have maturity dates ranging between August 6, 2029, and October 1, 2037. Borrower may, at its option, redeem, in whole or in part, any TPS-Related Debentures without penalty five years after the applicable issuance date of such TPS-Related Debenture. Through maturity (or any earlier redemption), interest on the TPS-Related Debentures is payable quarterly.

23. The Loans made by the Lenders under the Credit Agreement constitute senior obligations of Borrower, and therefore the amounts payable under the TPS-Related Debentures are Subordinated Indebtedness for purposes of the Credit Agreement, the payment of which is subordinated to the payment of the Obligations.

24.     Borrower has outstanding, and may in the future incur, other subordinated obligations, including its obligations with respect to shares of Series A Preferred Stock issued by Borrower.

## COUNT I

### BREACH OF CONTRACT / ACTION TO ENFORCE PROMISSORY NOTE

25.     Agent adopts and realleges paragraphs 1 through 24 above as though fully set forth and incorporated herein as this paragraph 25.

26.     The Credit Agreement and Notes are binding contracts between Agent and Borrower.

27.     Borrower breached the Credit Agreement and Notes by, among other things, failing to pay principal and interest of $247,558,596.80 due and owing as of May 28, 2009, under the Notes and Credit Agreement.

28.     Agent has performed its material obligations under the Credit Agreement and Notes.

29.     Agent, for itself and Lenders, has been damaged by Borrower's breach of the Credit Agreement and Notes in an amount equal to all amounts due under the Credit Agreement and Notes, including amounts for interest at the default rate, and attorneys' fees and expenses incurred in collecting the amounts owed under the Credit Agreement, in an amount to be proved at trial, not less than $247,812,605.90.

WHEREFORE, Agent respectfully prays that this Court enter a judgment in its favor and against Borrower for the following relief:

A. Entry of judgment in the amount of the Obligations, including all interest (where applicable under the Credit Agreement and Notes, under a default rate), attorneys' fees, expenses, and other amounts accrued or owed under the Credit Agreement and Notes through the day judgment is entered;

B. Post-judgment interest at the rate set forth in the Credit Agreement and Notes, including, where applicable, interest at a default rate;

C. Attorneys' fees and other costs of collection associated with enforcing Agent's and Lenders' rights under the Credit Agreement and Notes; and

D. Such other and further relief as this Court deems just and proper.

## COUNT II

## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

30.     Agent adopts and realleges paragraphs 1 through 29 above as though fully set forth and incorporated herein as this paragraph 30.

31.     The Credit Agreement and Notes are binding contracts between Agent and Borrower.

32.     Upon information and belief, Borrower intends to make payments in respect of its Subordinated Indebtedness and other subordinated instruments, including but not limited to the trustees on behalf of the holders of the 2001 Subordinated Debt and the TPS-Related Debentures, notwithstanding the express language of the Credit Agreement, the 2001 Subordinated Indenture, the documents governing the TPS-Related Debentures, and Borrower's non-payment of the Obligations on the Revolving Facility Termination Date. If Borrower makes said payments, Agent will have no adequate remedy at law.

33.     An actual controversy exists between Agent and Borrower with respect to whether Borrower is prohibited from making further payment(s) to subordinated debt holders.

34.     Unless Borrower is enjoined from making, or ordered not to make, further payments to junior subordinated debt holders prior to satisfying the Obligations in full under the Credit Agreement and Notes, Agent, for itself and Lenders, will suffer immediate and irreparable harm by Borrower's violation of the Credit Agreement and Notes.

35. A declaration of this Court is necessary to resolve this controversy.

WHEREFORE, Agent respectfully prays that this Court enter a judgment in its favor and against Borrower for the following relief:

A. A declaration that Borrower must satisfy the Obligations in full under the Credit Agreement and Notes prior to: (a) making further payment(s) to the trustee on behalf of the holders of the 2001 Subordinated Debt; (b) purchasing or redeeming the 2001 Subordinated Debt; (c) taking any action whereby the subordination of the 2001 Subordinated Debt to the Obligations might be terminated, impaired or adversely affected; or (d) entering into or consenting to any modification or alteration of any 2001 Subordinated Debt Document;

B. A declaration that Borrower must satisfy the Obligations in full under the Credit Agreement and Notes prior to: (a) making further payment(s) under any TPS-Related Debenture; (b) purchasing or redeeming the TPS-Related Debentures; (c) taking any action whereby the subordination of the TPS-Related Debentures to the Obligations might be terminated, impaired or adversely affected; or (d) entering into or consenting to any modification or alteration of any TPS-Related Debenture, or any related document;

C. A declaration that Borrower must satisfy the Obligations in full under the Credit Agreement and Notes prior to (a) making further payment(s) to or for the benefit of any holder, or trustee on behalf of any holder, of any junior subordinated debt; (b) purchasing or redeeming any junior subordinated debt; (c) taking any action whereby the subordination of any junior subordinated debt to the Obligations might be terminated, impaired or adversely affected; or (d) entering into or consenting to any modification or alteration of any document governing any junior subordinated debt;

D. A declaration that Borrower must satisfy the Obligations in full under the Credit Agreement and Notes prior to: (a) making further payment(s) under any preferred stock issued by Borrower, including, but not limited to Borrower's issued shares of Series A Preferred Stock; (b) purchasing or redeeming any preferred stock issued by Borrower, including, but not limited to Borrower's issued shares of Series A Preferred Stock; or (c) entering into or consenting to any modification or alteration of any preferred stock issued by Borrower, including, but not limited to Borrower's issued shares of Series A Preferred Stock, or any document governing such preferred stock;

E. Until Borrower satisfies the Obligations in full under the Credit Agreement and Notes, preliminarily and permanently enjoining Borrower

9

from: (a) making further payment(s) to the trustee on behalf of the holders of the 2001 Subordinated Debt; (b) purchasing or redeeming the 2001 Subordinated Debt; (c) taking any action whereby the subordination of the 2001 Subordinated Debt to the Obligations might be terminated, impaired or adversely affected; or (d) entering into or consenting to any modification or alteration of any 2001 Subordinated Debt Document;

F.  Until Borrower satisfies the Obligations in full under the Credit Agreement and Notes, preliminarily and permanently enjoining Borrower from: (a) making further payment(s) under any TPS-Related Debenture; (b) purchasing or redeeming the TPS-Related Debentures; (c) taking any action whereby the subordination of the TPS-Related Debentures to the Obligations might be terminated, impaired or adversely affected; or (d) entering into or consenting to any modification or alteration of any TPS-Related Debenture, or any related document;

G.  Until Borrower satisfies the Obligations in full under the Credit Agreement and Notes, preliminarily and permanently enjoining Borrower from: (a) making further payment(s) to or for the benefit of any holder, or trustee on behalf of any holder, of any junior subordinated debt; (b) purchasing or redeeming any junior subordinated debt; (c) taking any action whereby the subordination of any junior subordinated debt to the Obligations might be terminated, impaired or adversely affected; or (d) entering into or consenting to any modification or alteration of any document governing any junior subordinated debt;

H.  Until Borrower satisfies Agent's Obligations in full under the Credit Agreement and Notes, preliminarily and permanently enjoining Borrower from: (a) making further payment(s) under any preferred stock issued by Borrower, including, but not limited to Borrower's issued shares of Series A Preferred Stock; (b) purchasing or redeeming any preferred stock issued by Borrower, including, but not limited to Borrower's issued shares of Series A Preferred Stock; or (c) entering into or consenting to any modification or alteration of any preferred stock issued by Borrower, including, but not limited to Borrower's issued shares of Series A Preferred Stock, or any document governing such preferred stock; and

I.  Such other and further relief as this Court deems just and proper.

Dated:  June 19, 2009

Respectfully submitted,

JPMORGAN CHASE BANK, N.A.,
in its capacity as agent for Associated Bank, N.A.,
Bank of America, N.A., JPMorgan Chase Bank, N.A.,
Fifth Third Bank, M&I Marshall & Ilsley Bank, and
Union Bank of California, N.A.


By:  s/ *Jessica Perez Simmons*
One of its Attorneys

W. Scott Porterfield
William J. Barrett
Jessica Perez Simmons
BARACK FERRAZZANO KIRSCHBAUM &
  NAGELBERG LLP
200 W. Madison Street, Suite 3900
Chicago, Illinois  60606
Telephone: (312) 984-3100
Facsimile: (312) 984-3150