IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., in its capacity as agent for Associated Bank, N.A., Bank of America, N.A., JPMorgan Chase Bank, N.A., Fifth Third Bank, M&I Marshall & Ilsley Bank, and Union Bank of California, N.A., <br><br> Plaintiff, <br><br> v. <br><br> FBOP CORPORATION, a bank holding company organized under the laws of the State of Illinois, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 1:09-CV-03720 <br><br> Honorable Ronald A. Guzman |

**DEFENDANT FBOP CORPORATION'S SURREPLY
IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE
TO VOLUNTARILY DISMISS COUNT II OF THEIR COMPLAINT OR,
ALTERNATIVELY, FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Defendant FBOP Corporation ("FBOP") respectfully submits this Surreply in Opposition to Plaintiffs' Motion for Leave to Voluntarily Dismiss Count II of Their Complaint or, Alternatively, for Leave to File an Amended Complaint. FBOP's surreply corrects plaintiffs' misstatements of the law and mischaracterizations of FBOP's argument.

**A.      Plaintiffs Misstate the Law**

At its core, plaintiffs' reply brief urges that *even if the Court had no diversity jurisdiction at the time of filing* because necessary and indispensable parties could not be joined, the Court may nevertheless "preserve" diversity by allowing the plaintiffs to drop a count or amend their complaint. Reply Br. at 5. Plaintiffs are wrong. Federal jurisdiction does or does not attach based on the facts as they exist at the time of filing. If jurisdiction does not attach in the first

instance, "what happens later is irrelevant." *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998) (Easterbrook, J.).

Plaintiffs pin their hopes on bad law. Much of their reply brief is devoted to *Lewis v. Lewis*, 358 F.2d 495 (9th Cir. 1966), a more than forty-year-old Ninth Circuit case that is based on unique an inapposite facts, is contrary to Seventh Circuit precedent, and has effectively been overruled by the Supreme Court. *Lewis* was essentially a divorce proceeding cloaked in breach-of-contract language.[1] Mr. Lewis sued Mrs. Lewis for an accounting of jointly held corporate assets that she had allegedly misappropriated. The parties were diverse when the suit was filed, but Mr. Lewis subsequently changed his domicile to Mrs. Lewis's state. After the district court concluded that the corporations were indispensable parties, Mr. Lewis amended his complaint to join them as defendants. However, because he was now a citizen of the same state as the corporations, they moved to dismiss for lack of diversity. On interlocutory appeal, the Ninth Circuit held the district court "had no other choice but to dismiss the amended complaint" once it concluded that indispensable parties were not diverse. Id. at 502. Somewhat contradictorily, however, the Ninth Circuit suggested Mr. Lewis "should be afforded an opportunity to file a second amended complaint limited to a claim against the personal defendants based on an asserted breach of the settlement agreement, and seeking damages." Id. at 502.

---

[1] During their marriage, Mr. and Mrs. Lewis formed two California corporations, with one of their employees holding a nominal share. 358 F.2d at 497. When their marriage ended, Mrs. Lewis and the nominal partner, who collectively held a majority, removed Mr. Lewis from his position as president of both companies. *Id.* Mrs. Lewis formed two new companies and allegedly transferred much of the original companies' property to the new corporate entities. *Id.* at 497-98. Mr. Lewis (who lived in New York at the time) sued his ex-wife (who now lived in California) for breach of contract and for an accounting of the corporate assets. *Id.* at 498. Mrs. Lewis moved to compel joinder of all the companies as necessary parties or to dismiss the case for failure to do so. *Id.* After the court ordered them joined, Mr. Lewis moved to California himself and filed an amended complaint, naming all the companies as additional defendants. *Id.* at 499. The companies immediately moved to dismiss, arguing that plaintiff (now domiciled in California) shared their citizenship. *Id.* Plaintiff argued that he did not intend to seek any relief from the corporations, and to the extent his complaint appeared to request such relief, he asked the court to restrict his prayer to just the natural person defendants. Id. at 500.

It's unclear whether the Ninth Circuit meant that Mr. Lewis must dismiss his complaint and file a brand new action (as FBOP suggests plaintiffs could do here), or whether the court meant that Mr. Lewis could simply amend his existing complaint to drop the non-diverse parties and the requested relief to which they were indispensable. Plaintiffs adopt the latter interpretation and urge this Court to follow along. To the extent the semantically muddled dicta in *Lewis* actually support plaintiffs' proposition, however, the Seventh Circuit foreclosed that argument in *National Asso. of Realtors [NAR] v. National Real Estate Asso.*, 894 F.2d 937 (7th Cir. 1990) (Posner, J.).

First, the Ninth Circuit's conclusion that Mr. Lewis's relocation to California somehow destroyed diversity that existed between him and the indispensable companies at the time of filing is clearly contrary to the law of this Circuit. *See NAR*, 894 F.2d at 943 ("the citizenship of indispensable parties counts for purposes of diversity jurisdiction even if they are not named as parties"). If *Lewis* had been decided in the Seventh Circuit, the California companies would still have been diverse from Mr. Lewis even when he filed his amended complaint because he lived in New York at the time of filing the original complaint to which they were indispensable parties.[2] The Ninth Circuit's holding to the contrary is sufficient reason to disregard it here.

*Lewis* is also bad law for the additional reason that it contradicts *NAR*'s core holding that jurisdiction cannot be created retroactively by dropping a request for relief to which non-diverse parties are indispensable. The plaintiff in *NAR* sought injunctive relief in its own name and damages for the losses of its members, not all of whom were diverse from the defendant.

---

[2] Indeed, *Lewis* is at odds with two century-old Supreme Court precedent on this point as well. *See Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 549 (1824) (holding that intervention by nondiverse party will not deprive the court of jurisdiction *unless the intervenor was an indispensable party when the complaint was filed*); *see also Smith v. Sperling*, 354 U.S. 91, 93 n. 1 (1957); *American Nat. Bank and Trust Co. of Chicago v. Bailey*, 750 F.2d 577, 582 (7th Cir. 1984). Moreover, *Lewis* has never been cited by another court for the proposition plaintiffs assert here, that a complaint to which non-diverse parties are indispensable may be amended to create jurisdiction that could not have existed at the time of filing.

Proposing essentially the same solution the Ninth Circuit approved in *Lewis*, NAR argued that "all it ha[d] to do to cure the [jurisdictional] defect [wa]s dismiss its request for damages (and not all of that request, but only the part that seeks damages on behalf of its members), which is confined to Count IV, in order to satisfy the requirement of complete diversity." *Id.* at 941. The Seventh Circuit did not take the bait. "The rationale for requiring complete diversity," Judge Posner wrote for the panel, "is that the presence of residents of the same state on both sides of the lawsuit neutralizes any bias in favor of residents; *the rationale is independent of the nature of the relief sought*." *Id.* (Emphasis added).

In a concurring opinion, Judge Cudahy noted that

> There is an important policy underlying the delimitation of diversity jurisdiction in 28 U.S.C. § 1332(c), which provides that a corporation is to be considered a citizen of its state of incorporation and the state encompassing its principal place of business. *That policy is the desire to keep primarily local suits out of the federal courts*.

*Id.* at 943 (Cudahy, J., concurring) (citing S.Rep. No. 1830, 85th Cong., 2d Sess., *reprinted in* U.S.Code Cong. & Admin. News 3099, 3101-3102 (1958) (it is an abuse of federal jurisdiction when "a local institution, engaged in a local business and in many cases locally owned, is enabled to bring its litigation into the Federal courts simply because it has obtained a corporate charter from another State.").  Although such fastidious attention to complete diversity raised certain "practical concerns," Judge Cudahy concluded that "the majority's opinion is persuasive -- *especially given current trends in this court's approach to matters of jurisdiction*." *Id.* (Cudahy, J., concurring) (emphasis added). That trend has been to view the time of filing as a golden moment when jurisdiction either does or does not attach. If it does not attach in the first instance, "what happens later is irrelevant." *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998) (Easterbrook, J.); *see also Denberg v. United States R. Retirement Bd.*,

696 F.2d 1193, 1197 (7th Cir. 1983) (Posner, J.) ("Jurisdiction cannot be obtained retroactively.").

Even if *Lewis* were not at odds with Seventh Circuit authority,[3] the Supreme Court effectively overruled *Lewis* in *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004). Rejecting a similar attempt by the plaintiff in that case to create jurisdiction retroactively by altering the citizenship of its partnership, the Court held that "a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct." *Id.* at 576. Writing for the majority, Justice Scalia concluded that a scheme of "perfecting" subject matter jurisdiction like the one urged by plaintiffs in this case

> would have it that the time-of-filing rule applies to establish that a court has jurisdiction (and to protect that jurisdiction from later destruction), but does not apply to establish that a court lacks jurisdiction (and to prevent post-filing changes that perfect jurisdiction). But whether destruction or perfection of jurisdiction is at issue, the policy goal of minimizing litigation over jurisdiction is thwarted whenever a new exception to the time-of-filing rule is announced.

*Id.* at 581. *Lewis*'s quaint holding that amendment under Rule 15 can create jurisdiction where it did not exist before is both wrong and threatens the policy goal if minimizing jurisdictional litigation. *See Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir. 1959) ("A rule of procedure, of course, however convenient and salutary it may be, is without efficacy to extend the jurisdiction of a court.").

**B.    Plaintiffs Mischaracterize FBOP's Position**

---

[3] Plaintiffs' reliance on *Carson v. Allied News Co.*, 529 F.2d 206, 208 (7th Cir. 1976) is similarly unavailing. First, that case precedes the "current trend" in the Seventh Circuit's jurisprudence mentioned by Judge Cudahy. Second, the non-diverse parties in *Carson* were not indispensable. Because their joinder was not necessary to the complaint, they could be dismissed to preserve diversity by dropping them. That is not the issue here.

In their Reply, plaintiffs incorrectly state that FBOP concedes[4] this Court has jurisdiction over Count I. (Pl. Reply Br. at 5, 6 n.1). That is not the case. FBOP has asserted from the outset that certain absent parties—one of which is actually named in the averments of the complaint—are indispensable because plaintiffs seek to adjudicate their rights in this proceeding. That Count I seeks damages and Count II seeks injunctive relief is irrelevant. *See National Asso. of Realtors v. National Real Estate Asso.*, 894 F.2d 937 (7th Cir. 1990) (Posner, J.) (dropping count for injunctive relief did not retroactively create jurisdiction).

Plaintiffs also incorrectly suggest that FBOP concedes "there are currently no indispensable non-diverse parties to this lawsuit." (Pl. Reply Br. at 8.) The tautology of that statement aside, plaintiffs evidently misunderstand the thrust of FBOP's position. Courts examining subject matter jurisdiction consider not only the citizenship of those parties named in the caption, but also that of all parties who the court finds indispensable to the case. Plaintiffs suggest that FBOP's "logic is inconsistent" in urging the Court to resolve the jurisdictional issue first because, although "[FBOP] claims the Court does not have jurisdiction to rule on Plaintiff's Motion, . . . [FBOP] asserts that the Court does have jurisdictional power to determine whether indispensable parties should be added pursuant to Rule 19(b)." (Pl. Reply Br. at 5.) What plaintiffs characterize as "inconsistent logic," however, has been the law of the United States since the creation of the federal courts. *See Marbury v. Madison*, 5 U.S. 137, 176 (1803) (it is the prime duty of each court to determine its jurisdiction before it acts); *Bayo v. Chertoff*, 535 F.3d 749, 752 (7th Cir. 2008) ("We, of course, have jurisdiction to determine our jurisdiction.").

Notwithstanding the Court's power and duty to consider its jurisdiction first, Plaintiffs warn that if the Court did so here, "defendants could commonly make the general allegation that

---

[4] The footnote from FBOP's Response Brief cited by plaintiffs to support this claim says only that "rather than having the Court address the jurisdictional defect in their original complaint, plaintiffs may always elect to dismiss that complaint and file a new action, subject to the consequences imposed by Rule 41(d)." FBOP Br. at 6 n.2.

a nondiverse party is indispensable and therefore the lawsuit should be dismissed for lack of subject matter jurisdiction as of the filing of the complaint. Pl. Reply at 7. Plaintiffs are confused. Any defendant has a right to raise a Rule 12(b)(7) motion to dismiss for failure to join indispensable parties. The issue here is whether a plaintiff can moot that motion by amending its complaint in attempt to cure a jurisdictional defect. Jurisdiction is clearly determined as of the time of filing, and no recitation of a potential parade of horribles that might result from a court's review of its own jurisdiction can change what is required by the Constitution.

Respectfully submitted,

Dated: August 17, 2009

**FBOP CORPORATION**

By:   /s/David J. Bradford
      One of Its Attorneys

David J. Bradford
Ross B. Bricker
Ryan K. Harding
Spiridoula Mavrothalasitis
J. Andrew Hirth
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, Illinois 60611
Tel: (312) 222-9350
Fax: (312) 527-0484

Email: dbradford@jenner.com
       rbricker@jenner.com
       rharding@jenner.com
       smavrothalasitis@jenner.com
       ahirth@jenner.com